UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

```
------------------------------------------------------------------ x
THADDEUS TAYLOR,                                   :
                                                   :
                        Plaintiff,                 :
                                                   :         MEMORANDUM &
         -against-                                 :         ORDER GRANTING IN
                                                   :         PART AND DENYING IN
ABDUL-RAHMAAN I. MUHAMMAD et al.,                  :         PART DEFENDANTS'
                                                   :         MOTION TO DISMISS
                        Defendants.                :
------------------------------------------------------------------ x         3:23-CV-1505 (VDO)
```

**VERNON D. OLIVER**, United States District Judge:

Plaintiff Thaddeus Taylor, proceeding *pro se*, commenced this action against Defendants Abdul-Rahmaan I. Muhammad, Dayeshell Muhammad (collectively, the "Individual Defendants"), and My People Community Services ("MPCS"), bringing claims under Title VII of the Civil Rights Act of 1964 ("Title VII"), the Age Discrimination in Employment Act of 1967 ("ADEA"), the Americans with Disabilities Act of 1990 ("ADA"), the Connecticut Fair Employment Practices Act ("CFEPA"), the Connecticut Unfair Trade Practices Act ("CUTPA"), and common law. Plaintiff alleges retaliation, wrongful termination, intentional infliction of emotional distress, and discrimination on the basis of sex, race, color, national origin, religion, age, and disability. The defendants move to dismiss the First Amended Complaint ("FAC" or "Complaint") for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). As discussed below, the motion to dismiss is **granted in part and denied in part**. All claims are dismissed except for the retaliation claims against MPCS.

I.  **<u>BACKGROUND</u>**[1]

Plaintiff brought this action against his former employer, MPCS, an agency that provides support services for individuals who are involved in the criminal justice system. (FAC, ECF No. 15, ¶¶ 32, 34.) The Individual Defendants are practicing Muslims who make policies and rules for MPCS employees. (*Id.* ¶ 10.)

In 2017, Plaintiff was hired by MPCS as Intensive Support Staff. (*Id.* ¶ 14.) Taylor identifies as a Black male of "Baptist" religion who was disabled in his service in the United States Army. (FAC ¶¶ 9, 10; ECF No. 21-1 at 38.)

Plaintiff alleges that employment discrimination and misconduct began in January 2017. (FAC ¶ 12.) During Plaintiff's employment, the Individual Defendants prevented MPCS staff from cooking pork on grills and celebrating Christian holidays. (*Id.* ¶ 36.) And, though Plaintiff was a disabled veteran, Defendants forced him to work on military holidays. (*Id.*)

At some point, Plaintiff was demoted and transferred to a Third Shift Supervisor position in East Hartford. (*Id.* ¶ 15.) Plaintiff was also transferred to the "Morality House Program" in Hartford, where he worked with four residents. (*Id.* ¶¶ 15, 16.) Plaintiff never received any bad evaluations during his employment. (*Id.* ¶ 20.)

In February 2023, Plaintiff was placed on administrative leave without pay. (*Id.* ¶ 13.) Defendants were advised by the Department of Mental Health and Addiction Services ("DMHAS") that Plaintiff could no longer work with any clients because a client accused him

---

[1] The Court accepts as true the factual allegations in the Complaint and draws all reasonable inferences in Plaintiff's favor for the purpose of deciding Defendants' motion. And because the complaint filed with the CHRO is "integral" to the allegations in Plaintiff's Complaint, and because there are no disputed issues regarding its relevance, authenticity, or accuracy, the Court will consider it on this motion to dismiss. (Pl. Exs. G and H, ECF No. 21-1, at 37-47.) In deciding the motion, the court does not consider any of the other documents submitted by the parties.

of serious misconduct. (*Id.* ¶ 22.) Plaintiff was then sent home without the opportunity to retrieve his belongings. (*Id.* ¶ 23.) To this day, Plaintiff does not know any details about the complaint lodged against him (*Id.* ¶ 25.) Plaintiff asserts that the defendants failed to adequately investigate the complaint by failing to review the video cameras, interview staff and residents, or ask DMHAS to produce evidence. (*Id.* ¶¶ 33, 42.)

On March 16, 2023, Plaintiff filed a complaint with the Connecticut Commission on Human Rights and Opportunities ("CHRO"). (*Id.* ¶ 27; ECF No. 21-1 at 39.) Then, on April 25, 2023, MPCS terminated Plaintiff's employment. (FAC ¶ 7.) Plaintiff alleges that hewas terminated in retaliation for filing complaints about discrimination and that he was weeded out in favor of younger, well-educated female staff. (*Id.* ¶¶ 38, 41.)

## II. LEGAL STANDARD

A party may move to dismiss a complaint for "failure to state a claim upon which relief can be granted[.]" Fed. R. Civ. P. 12(b)(6). "On a motion to dismiss, all factual allegations in the complaint are accepted as true and all inferences are drawn in the plaintiff's favor." *Littlejohn v. City of New York*, 795 F.3d 297, 306 (2d Cir. 2015). "To survive dismissal, the pleadings must contain 'enough facts to state a claim to relief that is plausible on its face[.]'" *Buon v. Spindler*, 65 F.4th 64, 76 (2d Cir. 2023) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Documents filed *pro se* must be liberally construed and interpreted "to make 'the strongest arguments that they suggest.'" *Wiggins v. Griffin*, 86 F.4th 987, 996 (2d Cir. 2023) (quoting *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006)); *see also*

*Erickson v. Pardus*, 551 U.S. 89, 94 (2007). "Even in a *pro se* case, however, 'although a court must accept as true all of the allegations contained in a complaint, that tenet is inapplicable to legal conclusions, and threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.'" *Chavis v. Chappius*, 618 F.3d 162, 170 (2d Cir. 2010) (quoting *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009)). "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Walker v. Schult*, 717 F.3d 119, 124 (2d Cir. 2013) (internal citation and quotation marks omitted).

### III. DISCUSSION

#### A. Plaintiff's Title VII, ADEA, ADA, and CFEPA Claims Against Abdul-Rahmaan I. Muhammad and Dayeshell Muhammad

As an initial matter, Plaintiff's claims against the Individual Defendants under the ADEA, ADA, Title VII, and CFEPA must be dismissed because individuals cannot be liable under those statutes. *Guerra v. Jones*, 421 F. App'x 15, 17 (2d Cir. 2011) (explaining that the ADEA and Title VII do not "subject[] individuals, even those with supervisory authority over the plaintiff, to personal liability."); *Spiegel v. Schulmann*, 604 F.3d 72, 79–80 (2d Cir. 2010) (ADA and Title VII); *Rieger v. Orlor, Inc.*, 427 F. Supp. 2d 105, 121–22 (D. Conn. 2006) (CFEPA). These claims against Abdul-Rahmaan I. Muhammad and Dayeshell Muhammad are therefore dismissed.

#### B. Plaintiff's Title VII and CFEPA Discrimination Claims Against MPCS

Discrimination claims under Connecticut law are analyzed "in the same manner as federal courts evaluate federal discrimination claims." *Jackson v. Water Pollution Control Auth. of Bridgeport*, 900 A.2d 498, 508 n.11 (Conn. 2006). Regarding the remaining Title VII

and CFEPA claims against an employer, a plaintiff must plausibly allege that he "is a member of a protected class, was qualified, suffered an adverse employment action, and has at least minimal support for the proposition that the employer was motivated by discriminatory intent." *Littlejohn*, 795 F.3d at 311. Therefore, in an employment discrimination case, a plaintiff must plausibly allege that: "(1) the employer took adverse action against him, and (2) his race, color, religion, sex, or national origin was a motivating factor in the employment decision." *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 87 (2d Cir. 2015).

### 1. Sex, Race, Color, and National Origin Discrimination

Plaintiff alleges that Defendants treated him differently than other similarly situated white employees. (FAC ¶ 43.) Specifically, Plaintiff alleges that MPCS conspired with a third party to deprive him of a fair investigation, due process, and right to provide a defense. (*Id.* ¶ 44.) Plaintiff suggests that other employees who were under investigation did not experience similar deprivations. (*Id.*) Plaintiff also asserts that his employment was terminated because he was weeded out in favor of younger, well-educated female staff. (*Id.* ¶¶ 38, 41.)

As discussed below, the claims that MPCS discriminated against Plaintiff on the basis of his sex, race, color, and national origin fail at a key benchmark: the requirement to plead "plausible support to a minimal inference of discriminatory motivation." *Littlejohn*, 795 F.3d at 311. Circumstances giving rise to an inference of discrimination can include the following:

> the employer's criticism of the plaintiff's performance in ethnically degrading terms; or its invidious comments about others in the employee's protected group; or the more favorable treatment of employees not in the protected group; or the sequence of events leading to the plaintiff's discharge.

*Id.* at 312 (citation omitted). Where a plaintiff seeks to show discrimination through allegations of disparate treatment of a purported similarly situated employee, he must show that he "was

5

similarly situated in all material respects to the individuals with whom" he compares himself. *Mandell v. Cnty. of Suffolk*, 316 F.3d 368, 379 (2d Cir. 2003) (citation omitted); *accord Johnson v. Andy Frain Servs., Inc.*, 638 F. App'x 68, 70 (2d Cir. 2016). "In the context of employee discipline, [ ] the plaintiff and the similarly situated employee[s] must have engaged in comparable conduct, that is, conduct of comparable seriousness." *Dooley v. JetBlue Airways Corp.*, 636 F. App'x 16, 20 (2d Cir. 2015) (citation omitted).

Plaintiff's allegations that he was weeded out in favor of younger, well-educated female staff and that unidentified white employees were treated more favorably do not reasonably enable an inference of discrimination. Plaintiff's vague allegations include no "details as to timing, place, or circumstances" related to a defendant's actions involving those comparators to suggest that similarly situated persons were treated differently. *John v. Walmart Store No. 2585*, No. 3:21-CV-1285 (MPS), 2023 WL 2346577, at *4 (D. Conn. Mar. 3, 2023). Nor does Plaintiff provide details as to who the comparators are, "what their positions or responsibilities were at [the company], how their conduct compared to plaintiff['s] or how they were treated differently by defendant[]." *Haggood v. Rubin & Rothman, LLC*, No. 14-CV-34 (SJF), 2014 WL 6473527, at *12 (E.D.N.Y. Nov. 17, 2014); *accord Cromartie v. Dep't of Corr.*, No. 21-CV-1236 (JBA), 2022 WL 4237072, at *4 (D. Conn. Sept. 14, 2022).  The Complaint fails to identify, much less plausibly show any comparable employees who were treated more favorably.

Consequently, Plaintiff's Title VII and CFEPA claims of sex, race, color, and national origin discrimination are dismissed.

### 2. Religious Discrimination

Plaintiff alleges that he is a Baptist and that, during his employment, Defendants prevented MPCS staff from cooking pork and celebrating Christian holidays. (*Id.* ¶¶ 10, 36.)

In order to plead a religious discrimination claim under Title VII and CFEPA based on a failure to accommodate theory, a plaintiff must allege that:

> (1) that []he had a sincerely held religious belief that conflicted with an employment requirement, (2) that []he informed [his] employer of this belief, and (3) that the employer failed to accommodate [his] belief but instead disciplined [him] or subjected [him] to an adverse action for failing to comply with the conflicting employment requirement.

*Langer v. Hartland Bd. of Educ.*, No. 3:22-CV-01459 (JAM), 2023 WL 6140792, at *5 (D. Conn. Sept. 20, 2023) (citing *Handverger v. City of Winooski*, 605 F. App'x 68, 70 (2d Cir. 2015)). "The rule for disparate-treatment claims based on a failure to accommodate a religious practice is straightforward: An employer may not make an applicant's religious practice, confirmed or otherwise, a factor in employment decisions." *EEOC v. Abercrombie & Fitch Stores, Inc.*, 575 U.S. 768, 773 (2015).

The Court finds that Plaintiff's allegations fall short of stating claims of religious discrimination under Title VII and CFEPA. Plaintiff alleges that Defendants prevented MPCS staff from cooking pork and celebrating Christian holidays. But these vague allegations do not plausibly show conflict between a requirement of Plaintiff's employment and Plaintiff's religious beliefs. Critically, Plaintiff does not show that he requested an accommodation based on his sincerely held religious belief, or that any defendant made an employment decision motivated by a desire to avoid the prospective accommodation. Therefore, Plaintiff's claim fails because a plaintiff "must plausibly allege that he actually required an accommodation of his religious practice—in other words, that his *religious beliefs* made such an accommodation

7

necessary." *Giurca v. Bon Secours Charity Health Sys.*, No. 23-200, 2024 WL 763388, at *1 (2d Cir. Feb. 26, 2024).

Consequently, Plaintiff's Title VII and CFEPA claims of religious discrimination are dismissed.

### C. Plaintiff's ADEA and CFEPA Age Discrimination Claims Against MPCS

Plaintiff alleges age discrimination in connection with being weeded out in favor of younger, well-educated female staff. (FAC ¶¶ 38, 41.)

The ADEA provides that it is "unlawful for an employer . . . to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age[.]" 29 U.S.C. § 623(a)(1). A plaintiff alleging age discrimination must allege "that age was the 'but-for' cause of the employer's adverse action." *Vega*, 801 F.3d at 86 (citing *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 177 (2009)). The CFEPA similarly provides: "It shall be a discriminatory practice in violation of this section . . . [f]or an employer . . . to refuse to hire or employ or to bar or to discharge from employment any individual or to discriminate against any individual in compensation or in terms, conditions or privileges of employment because of the individual's . . . age[.]" Conn. Gen. Stat. § 46a-60(b)(1).

Absent from the complaint are facts from which it can be inferred that an adverse employment action was motivated by Plaintiff's age. Although Plaintiff's allegation that he is fifty years old plausibly shows that his age warrants protection, Plaintiff's threadbare assertion that he was weeded out in favor of younger females is devoid of any facts to plausibly support that claim. *See D'Cunha v. Genovese/Eckerd Corp.*, 479 F.3d 193, 194 (2d Cir. 2007) ("The ADEA prohibits discrimination in employment on the basis of age against persons aged 40 or

older."). As alleged, even under a liberal construction of the Complaint, the Complaint is bereft of "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Without more specificity regarding the identities and actions of the employees who allegedly replaced the plaintiff, the Court cannot draw an inference that Plaintiff's age caused an adverse employment action. *Bohnet v. Valley Stream Union Free Sch. Dist. 13*, 30 F. Supp. 3d 174, 181 (E.D.N.Y. 2014), *aff'd*, 594 F. App'x 53 (2d Cir. 2015); *see also Driscoll v. Bob's Disc. Stores*, No. 3:21-CV-00257 (KAD), 2021 WL 3568894, at *3 (D. Conn. Aug. 11, 2021) (dismissing CFEPA and ADEA claims where the complaint was "wholly conclusory and raises only speculation that Plaintiff was not recalled because of his age").

### D. Plaintiff's ADA and CFEPA Disability Discrimination Claims Against MPCS

Plaintiff alleges that, despite being a disabled veteran, Defendants forced him to work on military holidays. (FAC ¶ 36.)

When a plaintiff brings a discrimination claim under the ADA, he must plausibly allege that: "(1) the employer is subject to the ADA; (2) the plaintiff is disabled within the meaning of the ADA or perceived to be so by [his] employer; (3) [he] was otherwise qualified to perform the essential functions of the job with or without reasonable accommodation; (4) [he] suffered an adverse employment action; and (5) the adverse action was imposed because of [his] disability." *Davis v. N.Y.C. Dep't of Educ.*, 804 F.3d 231, 235 (2d Cir. 2015). While discrimination claims brought under CFEPA are construed similarly to ADA claims, the definition of disability under CFEPA is broader than the ADA's. *Hopkins v. New England Health Care Emps. Welfare Fund*, 985 F. Supp. 2d 240, 255–56 (D. Conn. 2013). As for the

9

ADA claim, "[a]t the motion to dismiss stage, the plaintiff must allege that he has a physical or mental impairment, which substantially limits an activity that constitutes a major life activity under the ADA." *Cavienss v. Norwalk Transit*, No. 21-CV-01694 (MPS), 2023 WL 7183833, at *5 (D. Conn. Nov. 1, 2023) (cleaned up). As for the CFEPA claim, at the motion to dismiss stage, the plaintiff must allege facts to plausibly show that he has a "chronic physical handicap, infirmity, or impairment" that is "of long duration, or characterized by slowly progressive symptoms distinguished from acute, and lasting a long time, long-continued, lingering, inveterate." *Drepaul v. Wells Fargo Bank, N.A.*, No. 23-CV-00123 (MPS), 2024 WL 127402, at *3 (D. Conn. Jan. 11, 2024) (cleaned up). A plaintiff may also allege that he was regarded as disabled if he has "an actual or perceived physical or mental impairment whether or not the impairment limits or is perceived to limit a major life activity." *Cavienss*, 2023 WL 7183833, at *5.

Plaintiff does not sufficiently allege that he is disabled within the meaning of the ADA or CFEPA or that MPCS regarded him as disabled. The Complaint is replete with allegations that Plaintiff is a disabled veteran but, without more specificity, the Court has no lens through which to examine whether his alleged disability interferes with a major life activity, as required by the ADA, or is a chronic physical handicap, infirmity, or impairment, as required by CFEPA. *See Pineda v. ESPN, Inc.*, No. 18-CV-00325 (MPS), 2018 WL 5268123, at *3 (D. Conn. Oct. 23, 2018) (dismissing ADA claim where a plaintiff did not provide any factual support detailing the frequency, duration, or severity of any limitations on a life activity caused by her PTSD); *see also Wanamaker v. Westport Bd. of Educ.*, 899 F. Supp. 2d 193, 212 (D. Conn. 2012) (dismissing CFEPA claim where there was a "naked assertion devoid of further factual enhancement"). Plaintiff's vague assertions about being a disabled veteran do not

10

enable a reasonable inference that MPCS regarded him as disabled because the Court cannot conclude whether there was "an actual or perceived physical or mental impairment" under the ADA or an employer regarded him as "physically disabled" under the CFEPA. *See* 42 U.S.C. § 12102(3)(A)*; see also Desrosiers v. Diageo N. Am., Inc.*, 314 Conn. 773, 794 (2014) (finding that CFEPA "protects individuals who are regarded as physically disabled from employment discrimination").

Consequently, because Plaintiff has failed to plausibly allege that he was disabled or was regarded as disabled by MPCS, Plaintiff fails to state a claim for disability discrimination under the ADA and CFEPA.

### E. Plaintiff's Title VII, ADEA, ADA, and CFPEA Retaliation Claims Against MPCS

Plaintiff alleges that he was subjected to retaliation after MPCS received notice of his complaints of discrimination with the EEOC. (FAC ¶¶ 27, 28.)

When a plaintiff alleges a retaliation claim under Title VII, ADEA, ADA, and CFEPA, a plaintiff must plausibly allege that (1) he engaged in protected activity, (2) the defendant was aware of that activity, (3) he was subjected to a retaliatory action, or a series of retaliatory actions, that were materially adverse, and (4) there was a causal connection between the protected activity and the materially adverse action. *Carr v. N.Y. City Transit Auth.*, 76 F.4th 172, 180 (2d Cir. 2023) (Title VII); *Lively v. WAFRA Inv. Advisory Grp., Inc.*, 6 F.4th 293, 304 (2d Cir. 2021) (ADEA); *Fox v. Costco Wholesale Corp.*, 918 F.3d 65, 72–73 (2d Cir. 2019) (ADA); *Dagenais v. Wal-Mart Stores E., LP*, No. 23-CV-241 (SVN), 2023 WL 7220753, at *2 (D. Conn. Nov. 2, 2023) (CFEPA). "[A]t the initial stage of a litigation, the plaintiff's burden is 'minimal'—he need only plausibly allege facts that provide 'at least

minimal support for the proposition that the employer was motivated by discriminatory intent.'" *Vega*, 801 F.3d at 86–87 (quoting *Littlejohn*, 795 F.3d at 311).

Regarding Plaintiff's claim that he was fired by MPCS in retaliation for filing a complaint with the EEOC and CHRO, Plaintiff has plausibly pleaded a prima facie case of retaliation. First, as to whether plaintiff engaged in a protected activity, filing a complaint on one's own behalf can constitute a protected activity where a plaintiff "possessed a good faith belief that the underlying employment practice was unlawful" under an anti-discrimination statute. *Cieplinski v. Univ. of Conn. Health Ctr.*, No. 18-CV-1503 (JCH), 2019 WL 13273446, at *10 (D. Conn. July 25, 2019). In March 2023, Plaintiff filed a complaint with the EEOC alleging discrimination under Title VII, ADEA, ADA, and CFEPA. (Pl. Ex. H, ECF No. 21-1, at 38–39.) Plaintiff also alleges that, in April 2023, MPCS was given notice of the agency complaint via mail and email. (FAC ¶ 28.) Plaintiff has therefore plausibly alleged that MPCS had knowledge that he engaged in a protected filing of a discrimination complaint.

Second, Plaintiff has sufficiently pleaded a causal connection between his protected complaint and a materially adverse event. "Job termination is a well-recognized adverse employment action." *O'Brien v. City of New York, Dep't of Educ.*, 686 F. Supp. 3d 221, 246 (E.D.N.Y. 2023). While the Second Circuit "has not drawn a bright line to define the outer limits beyond which a temporal relationship is too attenuated to establish a causal relationship between the exercise of a federal constitutional right and an allegedly retaliatory action[,]" *Gorman-Bakos v. Cornell Co-op Extension of Schenectady Cnty.*, 252 F.3d 545, 554 (2d Cir. 2001), the Second Circuit has held that a gap of two months between a plaintiff's protected complaint and employment termination sufficiently establishes causation. *Gorzynski v. JetBlue Airways Corp.*, 596 F.3d 93, 111 (2d Cir. 2010). Here, approximately one month had passed

between Plaintiff's filing of the protected complaint on March 16, 2023 and his termination on April 25, 2023. (FAC ¶ 28; Pl. Ex. H, ECF No. 21-1, at 39.) Plaintiff has thus sufficiently alleged a causal connection between his protected complaint with an agency and his termination.

Consequently, the motion to dismiss Plaintiff's retaliation claims under Title VII, ADA, ADEA, and CFEPA is denied.

F.     **Plaintiff's CUTPA Claim**

Plaintiff alleges that Defendants violated CUTPA by placing him on unpaid administrative leave without conducting a fair investigation. (FAC ¶ 46.)

CUTPA makes it unlawful for a party to engage in "unfair methods of competition and unfair or deceptive acts or practices in the conduct of trade or commerce." Conn Gen. Stat. § 42-110b(a). "'Trade' and 'commerce'" are defined as "the advertising, the sale or rent or lease, the offering for sale or rent or lease, or the distribution of any services and any property . . . and any other article, commodity, or thing of value in this state." *Id.* § 42-110a(4).

Even under a liberal construction of the allegations in the Complaint, the Court cannot reasonably infer that Defendants violated CUTPA. The source of friction between Plaintiff and Defendants is the handling of the complaints of misconduct and the aftermath of Plaintiff's employment. But Connecticut caselaw makes clear that an employer-employee relationship does not fall within conduct involving "trade or commerce," as defined by CUTPA. *Sempey v. Stamford Hosp.*, 221 A.3d 839, 848 (Conn. App. 2019). Because Plaintiff's allegations relate solely to the relationship he had with Defendants during the scope of his employment and because no other allegations of unlawful practices in the conduct of trade or business appear

13

in the Complaint, Plaintiff's CUTPA claim is dismissed. *See, e.g., Parimal v. Manitex Int'l, Inc.*, No. 19-CV-01910, 2021 WL 1146918, at *9 (D. Conn. Mar. 25, 2021).

### G.     Plaintiff's Intentional Infliction of Emotional Distress Claim

Plaintiff alleges that Defendants engaged in outrageous conduct by illegally terminating his employment and subjecting him to hardships, noting that he has since been unable to find a similar job. (FAC ¶¶ 47, 49.)

When a plaintiff alleges an intentional infliction of emotional distress claim under Connecticut law, he must set forth sufficient allegations "'(1) that the actor intended to inflict emotional distress or that he knew or should have known that emotional distress was the likely result of his conduct; (2) that the conduct was extreme and outrageous; (3) that the defendant's conduct was the cause of the plaintiff's distress; and (4) that the emotional distress sustained by the plaintiff was severe.'" *Apatow v. Town of Stratford*, 651 F. Supp. 3d 573, 591 (D. Conn. 2023) (quoting *Watts v. Chittenden*, 22 A.3d 1214, 1221 (Conn. 2011)). Additionally, "in order to hold an employer liable for the intentional torts of his employee, the employee must be acting within the scope of his employment and in furtherance of the employer's business." *A-G Foods, Inc. v. Pepperidge Farm, Inc.*, 579 A.2d 69, 73 (Conn. 1990). "[I]t must be the affairs of the principal, and not solely the affairs of the agent, which are being furthered in order for the doctrine to apply." *Id.* (internal citation and quotation marks omitted).

Plaintiff fails to plausibly allege outrageous conduct sufficient to state an intentional infliction of emotion distress claim. Here, Plaintiff alleges that Defendants terminated his employment, subjected him to an involuntary transfer, and failed to investigate complaints of misconduct in good faith. But "[l]iability for intentional infliction of emotional distress requires conduct that exceeds all bounds usually tolerated by decent society." *Nwachukwu v.*

14

*Liberty Bank*, 257 F. Supp. 3d 280, 297 (D. Conn. 2017). The alleged retaliatory misconduct and failure to sufficiently respond to complaints do not rise to the level of extreme or outrageous behavior. Consequently, Plaintiff's claim of intentional infliction of emotional distress against Defendants is dismissed.

IV. **CONCLUSION**

For the reasons described above, the motion to dismiss Plaintiff's claims of retaliation in violation of Title VII, ADEA, ADA, and CFEPA in connection with MPCS's termination of Plaintiff's employment is **DENIED**. The motion to dismiss all other claims, including all claims against the Individual Defendants and the claims that Plaintiff was discriminated against on the basis of his sex, race, color, national origin, religion, age, and disability, as well as Plaintiff's intentional infliction of emotional distress and CUTPA claims is **GRANTED,** and the claims are **DISMISSED**.

Accordingly, Defendant MPCS shall file an answer to the Complaint **within fourteen days of this order.** The stay on discovery in this case is **LIFTED**. By **October 30, 2024**, the parties shall confer and file a joint status report regarding their intended next steps. If the parties have not yet exchanged settlement demands and responses thereto, the parties shall propose a schedule for such an exchange.

The Clerk is directed to terminate Abdul-Rahmaan I. Muhammad and Dayeshell Muhammad from the docket.

**SO ORDERED.**

Hartford, Connecticut
September 24, 2024

/s/Vernon D. Oliver
VERNON D. OLIVER
United States District Judge